UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

CHAD DAVIS,

              Plaintiff,

v.                                                         Case No. 17-cv-256-pp

LORI DOEHLING,

              Defendant.

---

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (DKT. NO. 14) AND DISMISSING CASE**

---

The plaintiff, who is representing himself, filed this lawsuit under 42 U.S.C. §1983, alleging that the defendant had violated his constitutional right to adequate health care for his severe back pain. Dkt. No. 1. Although the original complaint named Lori Doehling as a defendant, it did not allege that she had any direct involvement in the purported constitutional violation. The court directed the plaintiff to file an amended complaint properly identifying the individuals who allegedly violated his constitutional rights. Dkt. No. 3. The plaintiff complied; the amended complaint alleged the defendant's direct involvement in disregarding his severe pain and spinal problems, so the court allowed him to proceed against the defendant on an Eighth Amendment claim of deliberate indifference to his serious medical needs. Dkt. No. 5. at 2.

The defendant has moved for summary judgment. Dkt. No. 14. The court will grant the defendant's motion.

## I. Facts[1]

The record is inconsistent regarding what caused the plaintiff to start suffering back pain, and when.

The amended complaint alleges that in 2010, while he was in the Kettle Moraine Correctional Institution, the plaintiff started having pain in his low back. Dkt. No. 4 at 1-2. The complaint says that he started getting medical care for that pain at Kettle Moraine. Id. at 2. The plaintiff alleged that a short time after he started obtaining medical care, he was released from Department of Corrections' custody, but then went back in, and while he was in the county jail, the pain became worse. Id.

In a health services request (HSR) the plaintiff submitted on February 13, 2013, while housed at Racine Correctional Institution, the plaintiff stated that he had suffered a significant back injury while at Winnebago County Jail, resulting in muscle spasms and lower back pain. Dkt. No 18-2 at 210. Yet when he was seen by a nurse on April 20, 2012, while at Kettle Moraine, he stated that his back pain stemmed from lifting weights. Dkt. No. 16 at ¶77; Dkt. No. 18-2 at 44. In a letter to the defendant dated October 21, 2015, the

---

[1] These background facts are taken from the defendant's proposed findings of fact, dkt. no. 16, which the court considers undisputed because the plaintiff did not respond to them. See Civil L.R. 56(b)(2)(B), (b)(4) (E.D. Wis.). The court also has considered and included facts from the declarations of Michelle Smith, dkt. no. 17, and Lori Doehling, dkt. no. 18. The court also relies on the facts in the verified amended complaint, dkt. no. 4. See Beal v. Beller, 847 F.3d 897, 901 (7th Cir. 2017) (citing Ford v. Wilson, 90 F.3d 245, 246 (7th Cir. 1996) ("[A] verified complaint is not just a pleading; it is also the equivalent of an affidavit for purposes of summary judgment . . . .").

plaintiff asserted that he began experiencing his severe back pain in 2014 while at Waupun Correctional Institution. Dkt. No. 18-2 at 177.

Despite these inconsistencies, the record supports the inference that before he was transferred to Redgranite Correctional Institution, where the defendant was the health services manager for the institution's health services unit (HSU), the plaintiff was experiencing significant back pain and had been seen regularly by the HSU medical staff of his various institutions. Dkt. No. 16 at ¶¶1,3, 81-83.

### A. The Defendant's Responsibilities at RCI

As the HSU manager at Redgranite during the relevant period of the plaintiff's claims, the defendant's duties involved the overall administrative support and direction of the unit. Id. at ¶7. Specifically, she was responsible for the direct supervision of the HSU nurses and ancillary staff; the management and supervision of the health care services provided; and the development of procedures, monitoring care plans, report preparation, and the provision of liaison activities to other disciplines, institution units, and community health care providers. Id. at ¶5. She also was charged with working with primary care professionals to provide quality health care in an efficient and effective manner. Id. at ¶7. She did not have authority to direct the delivery of that care or to determine when patients would be seen by care providers, and she did not normally provide direct care to patients. Id. at ¶8-10.

The defendant did not typically become aware of inmate HSRs unless the triage nurse clinicians—the individuals charged with handling the requests—determined that there was an emergency or that there was an issue of which the defendant should be made aware. Id. at ¶67. Thus, if the triage nurse, based on his or her professional judgment, could address the patient's request, the defendant would not see that request. Id. at ¶68.

B. The Plaintiff's Medical Care

After his transfer to Redgranite on June 3, 2015, the plaintiff contacted the HSU regarding his low back pain. Id. at ¶¶84-85. The plaintiff says that this was because he "experienced pain so debilitating it caused him to collapse." Dkt. No. 4 at 3. He says that he was not able to get medical attention, and that only after his family began calling the institution and complaining did he receive "any semblance of medical treatment." Id. Based on her examination of the plaintiff, a nurse diagnosed him with alteration in comfort, provided a no recreation restriction and a low bunk restriction, and gave him an ice bag, ibuprofen, and stretching instructions. Dkt. No. 16 at ¶86. He says he got a shot in his arm and got new medication "to relieve his back pain on a temporary basis," but he says that he has continued to suffer severe pain over the past year and a half. Dkt. No. 4 at 3. The pain has progressed to other areas, including his legs. Id.

During July 2015, however, the plaintiff submitted numerous HSRs regarding his low back pain and pain on the right side of his leg. Id. at ¶87;

Dkt. No. 118-2 at 17-18, 189-190. Various HSU staff responded to these requests by recommending walking, extending his low bunk restriction and ice bag allowance, scheduling appointments for advance care practitioners, and prescribing ibuprofen. Dkt. No 16 at ¶88; Dkt. No. 118-2 at 17-18, 189-190.

The plaintiff's advanced care provider saw him in August 2015, diagnosed him with mild osteoarthritis—primarily due to his history of weightlifting—and provided the plaintiff with various medications and an involved treatment plan that included a follow-up in six to eight weeks. Id. at ¶¶90-95. The plaintiff was restricted to no weightlifting or contact sports until further notice. Id. at ¶ 96.

After further tests, the plaintiff had his follow-up appointment with the advance care provider, was instructed to continue his treatment plan, and was put on the waiting list for physical therapy. Id. at ¶¶97-98. He was then consistently ordered and dispensed his prescribed medications. Id. at ¶99.

On October 20, 2015[2], the plaintiff wrote directly to the defendant regarding his continued back pain, the lack of an adequate diagnosis, and the previously assumed link between his feet and his back pain. Dkt. No. 17-2 at 33; Dkt. No. 18-2 at 177. He asked the defendant to resolve his ongoing issues and obtain an accurate diagnosis for his back pain by providing him an MRI or

---

[2] The amended complaint alleges that the plaintiff wrote directly to the defendant on October 19 or 20, 2016." Dkt. No. 4 at 3. The defendant, however, attached a copy of the plaintiff's letter to the declaration of Michelle Smith, the human resources director at RGCI. Dkt. No. 17-2 at 33. The date the plaintiff put on the letter is October 20, 2015. Id.

a podiatrist appointment. Dkt. No. 16 at ¶101; Dkt. No. 18-2 at 177. In response, the defendant said she had reviewed his medical record and found no description or implication of any foot deformity. Dkt. No. 16, ¶102; Dkt. No. 18-3. She noted that his recent tests showed his pain to be linked with aging, informed him that any further treatment he required would be determined by his advanced care provider, and reminded him of his upcoming appointment in early November. Dkt. No. 16 at ¶¶103-04; Dkt. No. 18-3.

On November 10, 2015, a nurse saw the plaintiff for his chronic low back pain and pain down his legs. Id. at ¶111. The plaintiff complained that his back pain had not improved, and had worsened. Id.; Dkt. No. 18-2 at 10-11. The nurse noted that the plaintiff requested an MRI of his back, wanted to know why he could not lift weights again, and said that he could not see how weight lifting would affect his back. Dkt. No. 16 at ¶112; Dkt. No. 18-2 at 10-11. The nurse decided to seek MRI approval. Dkt. No. 16 at ¶113; Dkt. No. 18-2 at 10-11. In the interim, the plaintiff was told to continue physical therapy exercises. Dkt. No. 16 at ¶113; Dkt. No. 18-2 at 10-11. The nurse further directed a low bunk restriction, provided additional and increased medications and imposed a no recreation medical restriction. Dkt. No. 16 at ¶114; Dkt. No. 18-2 at 11.

On December 1, 2015, a nurse saw the plaintiff for complaints of heel pain. Dkt. No. 16 at ¶¶115-16; Dkt. No. 18-2 at 8. The nurse suggested that the plaintiff follow up with nursing staff as needed, and his current pain medications were continued. Dkt. No. 16 at ¶¶115-16; Dkt. No. 18-2 at 8-9.

The plaintiff also was taught heel cord stretches; staff recommended he perform the stretches three to four times a daily. Dkt. No. 16 at ¶116; Dkt. No. 18-2 at 9.

The plaintiff's MRI was completed on February 11, 2016, and he was found to have mild to moderate multilevel degenerative changes. Dkt. No. 16 at ¶117; Dkt. No. 18-2 at 198.

In response to his further medical concerns, HSU medical staff saw the plaintiff regularly for exams and evaluations, and provided treatment plans and pain medication, medical restrictions such as low bunk and cushioned insoles, off-site specialty consultation and heel injections. Dkt. No. 16 at ¶118; Dkt. No. 18-1 at 102-126.

The plaintiff was transferred to Dodge Correctional Institution on December 6, 2017. Dkt. No. 16 at ¶123.

    C.    <u>Plaintiff's Inmate Complaints</u>

Because the defendant was the HSU manager, there were times when an inmate complaint examiner would contact her for information about an inmate's complaints if the complaints related to nursing staff, or to medical care. <u>Id.</u> at ¶29. In the plaintiff's case, an inmate complaint examiner contacted the defendant regarding complaints RGCI-2016-5375 and RGCI-2016-12098. <u>Id.</u> at ¶30; Dkt. No. 17-2 at 14-15; Dkt. No. 17-3 at 7-8.

Complaint RGCI-2016-5375, received in the examiner's office on March 14, 2016, was about purportedly inadequate medical care for the plaintiff's

feet, which he believed to be the source of his back pain. Dkt. No. 17-2 at 1, 14-15. The plaintiff complained that he was denied his request to see the podiatrist, which he previously had discussed with a nurse. Dkt. No. 17-2 at 14-15.

The examiner contacted the defendant regarding the complaint. Dkt. No. 16 at ¶ 34. The defendant reviewed the plaintiff's medical record, noted the plaintiff's correspondence with the HSU staff about his issue, and informed the examiner that the staff had responded to the plaintiff's request by telling him to discuss it with the PT. Id. at ¶¶ 35-36; Dkt. No. 17-2 at 2. She further noted that the plaintiff had sent the request to the HSU generally and not directly to her, that an MRI done in February showed the plaintiff had osteoarthritis, and that the physical therapist had provided the plaintiff with orthotics. Dkt. No. 16 at ¶¶37-38; Dkt. No. 17-2 at 2. She also mentioned that the plaintiff had been diagnosed with *pes planus* pronation of his feet, but that no podiatrist appointment had been recommended. Dkt. No. 16 at ¶39; Dkt. No. 17-2 at 2.

Based on this information, the examiner found that the plaintiff was not being denied appropriate care. Dkt. No. 16 at ¶40; Dkt. No. 17-2 at 2-3. The plaintiff had seen, and had continued to see, medical staff concerning his problems, and there was no reason to believe his needs were not being met or that his care was inadequate. Dkt. No. 16 at ¶¶40,43; Dkt. No. 17-2 at 2. The examiner noted that the plaintiff's disagreement with the level of care was a matter of professional medical judgment. Dkt. No. 16 at ¶41; Dkt. No. 17-2 at

2. The examiner recommended dismissal of the complaint, and the recommendation was accepted. Dkt. No. 16 at ¶¶ 44-45; Dkt. No. 17-2 at 3-4. The plaintiff's appeal was denied. Dkt. No. 16 at ¶46; Dkt. No. 17-2 at 9.

Complaint RGCI-2016-12098 was received by the inmate complaint examiner's office on June 13, 2016. Dkt. No. 16 at ¶48; Dkt. No. 17-3 at 1. The plaintiff complained that on June 01, 2016, the Special Needs Committee denied his request for soft inserts, which had been recommended by a UW podiatrist. Dkt. No. 16 at ¶49; Dkt. No. 17-3 at 7.

An examiner contacted the defendant about the complaint. Dkt. No. 16 at ¶51; Dkt. No. 17-3 at 2. The defendant reviewed the record and informed the examiner that a UW podiatrist had recommended soft inserts for the plaintiff, but the plaintiff had submitted his request for the inserts prior to a scheduled follow-up appointment with another doctor and therefore prior to an order for insoles being issued. Dkt. No. 16 at ¶¶52-54; Dkt. No. 17-3 at 2. She also informed the examiner that the cork insoles the plaintiff had had since 2014 complied with the UW podiatrist's soft insole recommendation. Dkt. No. 16 at ¶55; Dkt. No. 17-3 at 2.

Based on this information, the examiner recommended dismissal of the complaint, and the plaintiff's complaint was dismissed. Dkt. No. 16 at ¶¶56-57; Dkt. No. 17-3 at 2. The plaintiff did not appeal the dismissal. Dkt. No. 16 at ¶58.

9

## II. Standard of Review

Federal Rule of Civil Procedure 56 provides that the court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); Boss v. Castro, 816 F.3d 910, 916 (7th Cir. 2016). A fact is "material" if it "might affect the outcome of the suit" under the applicable substantive law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A dispute of fact is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id. The court construes all facts and reasonable inferences in the light most favorable to the non-movant. Bridge v. New Holland Logansport, Inc., 815 F.3d 356, 360 (7th Cir. 2016).

## III. Analysis

The defendant argues that the court should grant summary judgment in her favor because she had no direct involvement in the plaintiff's medical care. She provided no direct care to the plaintiff for his foot and back problems, she was not involved in the decision to place the plaintiff on physical therapy and she was not authorized to make or change any of the plaintiff's treatment plans. She maintains that she adequately responded to the complaint examiner's inquiries regarding the plaintiff's inmate complaints about his medical care, and to the plaintiff's direct letter to her in which he complained of inadequate medical care. Her responses to those communications were based

on her review of the plaintiff's medical records, which she argues showed that the plaintiff was receiving constant care.

The plaintiff contends that because he wrote to the defendant and explained his medical issues, she was aware of his suffering. He argues that he asked the defendant for help, but that she ignored him.

The first section of the plaintiff's opposition brief is titled, "The Defendant Is Subject To Supervisory Liability." Dkt. No. 19 at 1. In the body of the argument, however, he notes that he must show that the defendant was personally involved in the alleged violations, and cites some of the cases that establish that requirement. Id. at 1-2. To the extent that the plaintiff means to argue that because the defendant was the manager of the HSU, she was responsible for the actions of anyone else, his argument fails. "Section 1983 does not create collective or vicarious responsibility. Supervisors are not responsible for the errors of their subordinates." Pacelli v. deVito, 972 F.2d 871, 878 (7th Cir. 1992). As the court explained in its order directing the plaintiff to amend his original complaint, and as the plaintiff appears to acknowledge in the body of his opposition brief, the plaintiff must show that the defendant was personally involved in the constitutional deprivation he alleges.

In the amended complaint, the plaintiff did not mention the defendant until the bottom of the third page. Dkt. No. 4 at 3. He alleged that he wrote to the defendant, explaining his pain and asking to be scheduled for an MRI or a

11

podiatrist appointment. Id. He conceded that she responded to that letter two or three days later, but asserted that "without having examined" him, she told him she'd reviewed his medical records and did not see anything about his foot problems (even though he'd filed "numerous notations from WCI.") Id. at 4. The amended complaint alleged that the plaintiff wrote the defendant again, explaining that an off-site specialist had made certain recommendations, but that he hadn't received what the specialist had recommended. Id. He said that the defendant responded by "accus[ing]" him of asking for a thicker mattress, and saying that doctors could not go straight to certain medications, and that the specialist only made recommendations. Id. The official record does not fully support this version of events, but even if it did, these allegations do not prove that the defendant was directly involved in the violations the plaintiff described.

The record demonstrates that the only direct interaction between the plaintiff and the defendant regarding the medical care the plaintiff was receiving for his back pain was the letter the plaintiff sent to the defendant on October 21, 2015. In the letter, the plaintiff explained his debilitated state and the purportedly inadequate diagnoses for his back pain. The defendant responded the same day noting that the plaintiff had been provided medical testing that suggested that his pain was due to aging. She explained to the plaintiff that she did not determine what care he would receive—his advanced care provider would do that, and she reminded him that he had an

appointment with that provider coming up. She suggested he bring his concerns up at that time.

The court agrees that these facts, along with the inmate complaints the defendant reviewed, show that the defendant was aware that the plaintiff was complaining about his medical care. But mere knowledge is not enough to prove liability for a constitutional violation under §1983. "An official satisfies the personal responsibility requirement of section 1983 if she acts or fails to act with a deliberate or reckless disregard of plaintiff's constitutional rights, or if the conduct causing the constitutional deprivation occurs at her direction or with her knowledge and consent." Crowder v. Lash, 687 F.2d 996, 1005 (7th Cir. 1982) (citations omitted).

The record does not support the plaintiff's contention that the defendant ignored him. She responded to his letter. She reviewed his medical file. She told him she did not see any mention in it of any foot deformity, explained what she *did* see (a diagnosis that his problems were related to aging), and informed him that she wasn't the person who made the decisions about his medical care. She advised him to raise his concerns with the advanced care specialist—the person who *did* have the ability to make decisions about his treatment and care. The record does not support a conclusion that the defendant failed to act—she responded to the plaintiff when he contacted her directly, and when the examiner contacted the defendant about the plaintiff's complaints, she provided the requested information. The record does not support a conclusion

13

that the defendant disregarded the plaintiff's constitutional rights. She was not in charge of his care, could not direct treatment, was not the person who decided what medicine or procedures he would receive. She did not direct anyone to ignore or disregard the plaintiff's condition. She did not consent to anyone else ignoring or disregarding the plaintiff's condition.

In fact, the record shows that every time the plaintiff submitted HSU requests, someone responded or addressed those requests. The plaintiff's argument really boils down to the fact that he disagrees with how his diagnoses and treatments proceeded. He disagreed with opinions that his weight lifting could have caused his problems. He disagreed with the timing of his MRI. He disagreed with various treatments—walking, stretches, continuing certain pain medications. The court understands that some of these treatments did not provide relief immediately, or the relief that the plaintiff hoped for. But the *defendant* did not make any of these diagnoses, or prescribe any of these treatments. And even if she had, "neither medical malpractice nor a mere disagreement with a doctor's medical judgment amounts to deliberate indifference . . . ." Greeno v. Daley, 414 F.3d 645, 653 (7th Cir. 2005) (citing Estelle v. Gamble, 429 U.S. 97, 106 (1976)).

On this record, no reasonable jury could conclude that this defendant—the manager of the health services unit who got one complaint letter from the plaintiff and who reviewed two of his inmate complaints—was personally involved in acts evidencing deliberate indifference to the plaintiff's serious

14

medical needs. Given that, the court must grant summary judgment in favor of the defendant and dismiss the case.

## IV. Conclusion

The court **GRANTS** that the defendant's motion for summary judgment. Dkt. No. 14.

The court **ORDERS** that this case is **DISMISSED**.

This order and the judgment to follow are final. A dissatisfied party may appeal this court's decision to the Court of Appeals for the Seventh Circuit by filing in this court a notice of appeal within **30 days** of the entry of judgment. See Federal Rule of Appellate Procedure 3, 4. This court may extend this deadline if a party timely requests an extension and shows good cause or excusable neglect for not being able to meet the 30-day deadline. See Federal Rule of Appellate Procedure 4(a)(5)(A).

Under limited circumstances, a party may ask this court to alter or amend its judgment under Federal Rule of Civil Procedure 59(e) or ask for relief from judgment under Federal Rule of Civil Procedure 60(b). Any motion under Federal Rule of Civil Procedure 59(e) must be filed within **28 days** of the entry of judgment. The court cannot extend this deadline. See Federal Rule of Civil Procedure 6(b)(2). Any motion under Federal Rule of Civil Procedure 60(b) must be filed within a reasonable time, generally no more than one year after the entry of the judgment. The court cannot extend this deadline. See Federal Rule of Civil Procedure 6(b)(2).

The court expects parties to closely review all applicable rules and determine, what, if any, further action is appropriate in a case.

Dated at Milwaukee, Wisconsin, this 4th day of January, 2019.

BY THE COURT:

**HON. PAMELA PEPPER**
**United States District Judge**